DANIEL W. WING v. LEWIS B. GRIFFIN.(a)

A party to whom the owner of a lien upon property has executed an assignment of the lien, unaccompanied by a delivery of the property itself, has no claim against a person who obtains possession of the property subsequently to the assignment.

A lien cannot be assigned, while the assignor retains possession of the property charged therewith.

*It seems* that where logs have been transported by being towed through a canal or river, or rafted together and floated, the person performing the service has a lien upon the logs for his compensation, upon the same principle which gives a lien for the freight of goods forwarded by ordinary conveyances.

Where a party, claiming a lien upon property for transportation, took proceedings in the United States court for its enforcement, it was *held*, that although the court

---

(a) Woodruff, J., was not present at the argument, and did not participate in the decision of this case.

might not have had jurisdiction, it had control of the property so far as to relieve it from the lien, on an undertaking being given by the claimant to comply with the final order of that tribunal.

Where the proceedings were dismissed on the ground that the expense by inland route exceeded that charged upon tide water; *held*, that this addition of one claim to another, over which (if presented alone) the court would have exercised jurisdiction, did not render the whole proceedings "*coram non judice*" and void.

This was an action upon a promissory note for $637 28. The answer alleged, 1st, payment, and, 2dly, that the plaintiff was "indebted to the defendant in upwards of $1,000, for freight upon 1,500 logs and 150 piles of dock timber, or thereabouts." The set off and counter claim in the answer, and the plea of payment, were controverted in the reply.

The cause was tried before a referee, who reported against the defendant upon the first branch of the defence. In reference to the second, the facts were as follows :

The plaintiff bought the logs and piles above mentioned from one Dayton, to whom they were sold by one Ruggles. Pursuant to an agreement by Ruggles with one Pilling, the logs, &c., were towed by the latter from Whitehall, in this state, through the Northern canal, to Troy, in detached parcels, and were then rafted together, so as to make a float, supplied with sails, &c., and conveyed over the Hudson river to New York.

The sale to Dayton, and from him to the plaintiff, took place while the timber was on the way.

Pilling executed an assignment of his claim for the transportation, to the defendant, Griffin, with all his title, lien, claim and demand to the logs themselves, and covenanted to allow his name to be used in all suits at law or in admiralty, for the recovery of the logs, &c. The plaintiff had not, at the time of this assignment, come into actual possession of the timber. The defendant, Griffin, in the name of Pilling, libeled the logs, &c., in the United States district court, for the charges for transportation. The cause was heard in that court on pleadings and proofs, and after argument the libel was dismissed, on the ground that the expense of the transportation by canal navigation exceeded that upon tide water, and that, therefore, the

libellant was not entitled to prosecute his claim in that court. During the litigation in the district court, the timber was released by consent from the custody of the marshal, upon the claimant and respondent (Wing) filing a bond to abide by the final decree of the court.

The plaintiff had not, at the time of the assignment, come into actual possession of the timber.

The referee found, that the lien for freight for the logs and piles, in favor of Pilling, was a valid claim in the hands of the defendant; and accordingly, the note and interest being $744 06, and the claim for freight $1,153 89, the amount certified in favor of defendant was $409 83.

From the judgment against him, entered upon the report, the plaintiff appealed.

*J. R. Flanagan* and *David Dudley Field*, for the plaintiff.

I. The answer does not claim any indebtedness as assignee. There was no evidence of any claim or lien except as assignee. The referee erred in admitting such evidence, and the assignment from Pilling to Griffin. The answer sets up a claim for freight. There was no freight. (Abbott on Ship. 491; 3 Kent's Com. 219.)

II. A lien is a personal right to retain, and not assignable. (Cross on Lien, 2 Story Eq. § 506.)

III. The plaintiff is in no way responsible for the transportation of the logs and piles, unless it be because Pilling had a subsisting lien on them, which the plaintiff was bound to discharge, and which created a personal claim against him. (Story on Bailments, § 589; 5 Meeson and Welsby, 502.)

IV. Pilling never had any such lien, and his claim was a personal one against Ruggles, with whom he made his contract. (Abbott on Shipping, p. 512, 5th Am. ed.; 2d Kent's Com. p. 637, 6th ed.; 3d Id. p. 218, 6th ed.)

V. If there had been such a lien, it would have been discharged by the delivery of the logs and piles on their arrival

in New-York. (Cross on Law of Lien, p. 189; Abbott on Shipping, p. 364.)

VI. If they were not discharged by that delivery, they were discharged from any lien by the order and stipulation or bond of May 2d, 1848.

VII. The decree of the United States district court adjudged that possession of the raft was delivered to the plaintiff, and that the lien on the logs and piles at common law is lost. But whether lost or not, the lien gave no personal claim against Wing.

*Alfred Mathews* and *Charles P. Kirkland*, for the defendant.

. I. Pilling had a lien on the logs and piles for the freight. (2 Kent's Com. 609; 2 Phillips' Ev. 231, 4; 1 Cowen's Treatise, 295.)

II. This lien was never, in any manner, waived or abandoned by Pilling. It continued in full force when the property was taken by Wing, and nothing has since been done by Pilling to release or relinquish it. (7 Cowen's R. 670; 680; vide *Palmer* v. *Hand*, 13 Jur. 434.

III. The proceedings in the United States court not being *within the jurisdiction* of that court, in no wise affected Pilling's rights or lien; the case is in the same condition as if those proceedings had never been had.

IV. The judgment in the proceedings in the United States court can in no manner operate as an estoppel or bar, as the case was dismissed on the *sole and express* ground *of want of jurisdiction.*

V. Wing was to all practical purposes the consignee of the property, and as such liable for the freight. (3 Kent's Com. 221, 222.) But if not consignee, he was, under the circumstances, equally liable to the lien for the freight.

VI. Wing having taken the property, with the lien upon it existing, and in no manner waived or relinquished, was liable

to an action at Pilling's suit, for the recovery of the amount of the lien. (8 Paige, 640.)

Pilling might have brought an action sounding in tort, or he might have waived that and brought an action sounding in contract. (13 Wend. 154; 1 Hill, 240; 3 Hill, 283; 5 Hill, 584; 2 Comstock, 293; 26 Wend. 467; 4 Wend. 79; 8 Bing. 43; 3 New Hamp. 384; 10 Mass. 436.)

VII. At any rate, whatever the form of enforcing the claim may have been, Pilling's claim on Wing was for a fixed and definite pecuniary amount, namely, the price of the freight; in other words, the amount of the lien.

VIII. This lien, or what is tantamount, this pecuniary claim or demand, was the subject of assignment; it could lawfully be assigned; and it was validly and lawfully assigned to the defendant. (*Everett* v. *Coffin*, 6 Wend. 643; *Nash* v. *Masher*, 19 Wend. 431; 4 J. R. 103.)

IX. It being thus assigned to the defendant, he became entitled to have and demand of Wing that amount of money.

X. This claim and demand, this pecuniary amount thus assigned to and vested in the defendant, was a proper subject of set off or allowance, both under the code and on general principles.

XI. The referee, therefore, properly allowed it, and the motion to set aside his report should consequently be denied.

By the Court. Ingraham, First J.—The note upon which this action is brought is admitted, and the defence to it consists of a set off for the freight of certain logs from Whitehall to this city, claimed by one Pilling, and assigned by him to the respondent.

The first objection made to the recovery for this set off is, that the charge for transportation of the logs cannot be said to be for the freight of them, and does not come within the rules which give a lien on the articles so transported. If it should be conceded that it is not strictly to be considered as freight, still I am of the opinion that the service rendered is one for which the party doing the work had a right to a lien upon the

logs until his charge is paid. The service is one of the same nature, and the rules applicable in cases of freight of goods may be applied to this case, without any departure from legal principles. I think, however, there are other points which must dispose of this case without necessarily deciding that point.

Pilling having the charge of the property for transportation, on its arrival here delivered it to Sharp, with special directions not to part with the possession until he received the pay for transportation. His claim for that was against the person he undertook the transportation for; no other could be liable for such charge unless upon the receipt of the property subject to a lien therefor. Of this there can be no doubt, nor was it disputed on the argument. It may well be doubted whether such claim for the transportation could be assigned to a third person without accompanying it with the property upon which the charge was a lien. The rule I understand to be, that a lien cannot be assigned while the assignor retains possession of the property charged therewith. But whether so or not, it is very clear that no third person, not a party to the original contract of transportation, can be charged with such expense, unless upon receipt of the property while subject to the lien. If this be so, it is important to ascertain whether, at the time of the assignment, the property had ever been in the possession of Wing. The only evidence of this fact is in the receipt given by Wing, dated 27th October, 1847. This purports to be a receipt of the logs free from incumbrance. This, from the wording of it, was evidently endorsed upon the contract of Wing and Dayton for the transportation. That it was not an actual delivery is evident, from the declaration of Pilling in the assignment to Griffin, that the logs were at that time in his possession, lying in the basin. This paper is dated 4th November, 1847, a week after the receipt of Wing; and also the declaration in the libel filed in the United States court by Pilling, which was sworn to on the 23d November, 1847, by the respondent, as attorney for Pilling. It is also to be observed, that while Pilling alleges the logs were left with Sharp as his agent, yet, on

Sharp's examination, no attempt is made to show by him any delivery to Wing, or any change in the possession of Sharp.

With this evidence I am at a loss in any way to sustain the finding of any possession of this property by Wing subject to this lien, which could in any way make him responsible for the freight or charge for transportation.

There must have been such a possession before the date of the assignment, to enable Griffin to avail himself of it as a set off against the note of Wing. Even if the property subsequently passed into the possession of Wing, such possession could give Griffin no claim upon him under the assignment of that date, it being unaccompanied with any delivery of the property.

The proceedings in the United States court also discharged the property from the lien, if it ever existed. Pilling voluntarily selected that tribunal for the enforcement of the lien. It is not material that the court should have jurisdiction. It had control of the property so far as to relieve it from the lien on the undertaking being given to comply with the final order of the court; during that period which elapsed after giving the undertaking, and before the decision of the court, no lien remained upon the property. Had the logs during that period been sold to a *bona fide* purchaser, there would be no doubt of his title to the same being free from such lien. I know of no rule by which the lien could be revived after such decision.

It was urged that the proceeding was dismissed for want of jurisdiction. There is nothing in the decision to that effect. There can be no doubt that if the claim had been for the transportation on tide water alone, the court would have entertained jurisdiction, and the mere addition to the claim of another for inland transportation, on account of which the libel was dismissed, did not make the whole proceeding " *coram non judice* " and void.

The court had a jurisdiction in part, but which they refuse to exercise, because part of the services rendered were not on tide water.

The referee, we think, erred in allowing this set off, and the

report must be set aside and the case referred back to the referee. Costs to abide event.

Ordered accordingly.